3, 11, 0, 7, 9, 4. People of the State of Illinois, an athlete by Justin Michalowski versus Jamie Lercher, acknowledged by Kathleen Hill. Ms. Hill? Good morning. May it please the Court, my name is Kathleen Hill from the Office of the State Appellate Defender, and I represent the defendant appellant James Lercher. For purposes of oral argument, I intend to focus my remarks on arguments 1 and 2, excuse me, 2 and 4 of the appellant's case. James Lercher was denied a fair trial when, during closing argument, the prosecution repeatedly misstated the DNA evidence that came from a blue dildo that was recovered from the Lercher home. Deborah Minton, the State's DNA expert, testified that the dildo contained, quote, a mixture of DNA profiles, and that James Lercher, Amanda Lercher, and A.R. could not be excluded from having contributed to the mixture of DNA profiles present on the dildo, but no affirmative match could be made. The State, in its closing argument, seized on this word profile and turned it on its head, telling the jury, quote, A.R.'s material generated her profile on the item, and that DNA analysis, quote, found the person whose DNA material is in the mix there. Their profile is Amanda, A.R., and the defendant. The Illinois Supreme Court has held that this kind of overstatement of forensic evidence is reversible error in People v. Linscott and People v. Sutherland. In Linscott, the court noted that a new trial is required if prosecutorial misconduct constitutes a material factor in conviction or substantially prejudices the defense. If the reviewing court could not say that it did not contribute to the conviction, a new trial is necessary. DNA evidence is incredibly persuasive. Juries find it to be nearly infallible. This was not acceptable shorthand, as the State would have this court believe. The State cannot take scientific evidence of the cannot-be-excluded type, turn it on its head, say that the DNA evidence found the person who was on there, and then claim that it was shorthand. The effect of this was incalculable. As I've mentioned, juries find DNA evidence to be incredibly persuasive. There was very limited scientific and forensic evidence in this case, and the State repeatedly argued that this misstatement, that the DNA evidence found A.R.'s profile on this item, supported A.R.'s version of events. This case effectively boiled down to a credibility contest between the minor complainant and my client, James Lurcher. The State argued, hey, look, the scientific evidence found A.R.'s profile on this item. That supports her version of events. Therefore, this jury should find her to be credible, and James Lurcher's alternate version of events to be not credible. The State cites People v. Smith for the proposition that DNA evidence can be somehow found to be shorthand, that the prosecution can use shorthand or an inference in closing argument.  This was not taking long and extensive DNA testimony and using shorthand to refer to it. This was actually affirmatively misstating what the evidence said, telling the jury that the DNA evidence found A.R.'s profile on this item, and that was error that entitles James Lurcher to a new trial. Turning to argument four, the trial court also erred when, in response to a jury note asking for a definition of reasonable doubt, it told the jury that, quote, you've received all the definition, which is none, of reasonable doubt. Reasonable doubt is for you to determine. It has long been the case in Illinois, and Illinois courts have repeatedly held that courts should not attempt to define reasonable doubt for a jury, because the words themselves are the best definition, and the phrase is essentially self-defining. Now, let me just say, I mean, and I realize this, but isn't that what the court told them? It was for them to define it? Saying that the words are self-defining does not mean that there is no definition, and it does not mean that the jury is free to accept whatever, adopt whatever definition of reasonable doubt it chooses. Well, what definition, under Illinois law, what definition of reasonable doubt must the jury determine, come up with? A jury is charged with determining whether a reasonable doubt exists. Let me ask, but, true, but what is a jury to determine with respect to the definition of reasonable doubt? I accept that the jury's long for a definition of reasonable doubt, wish for a trial court to define the term for them. Unfortunately for juries, the Illinois courts have repeatedly held that trial courts should not engage in the exercise of attempting to define reasonable doubt. And what's the only logical conclusion from that is that it's for the jury to define reasonable doubt, isn't it? I mean, what else, what is the only logical corollary? I mean, this law makes no sense to me, by the way, because juries do want to know, but if you tell the judge you cannot define reasonable doubt to the jury, what's the only logical corollary from that? What's left? The jury's got to define it. Respectfully, it's not that the jury has to define it, it's that the jury has to live with what may be admittedly an imperfect definition, which is this term is self-defining. That's what Illinois courts have repeatedly held, that this term is self-defining, and that the words themselves are the best definition. That's not the same as saying there's no definition and the jury can go forth and adopt whatever definition it chooses. And people in the First District Court and people determined recently held that very similar comments, it's for you to determine what reasonable doubt means, were error and were an erroneous instruction on reasonable doubt. I accept that this is difficult and that it would be perhaps simpler for juries if the trial court could offer them an explanation, but the rule is this term is self-defining, not undefined. And to say there is no definition of reasonable doubt, jury it's for you to determine what the definition is, is an incorrect reasonable doubt instruction. Was defense counsel there when the court decided how to answer the question? Yes, counsel was there. Did counsel approve the response? Yes. So why isn't that issue forfeited? We would submit that the improper reasonable doubt instruction is reviewable as plain error because courts have repeatedly held, Terman held and this court I believe held in Franklin, that under the second prong of plain error, an insufficient or an incorrect reasonable doubt instruction is a structural error and thus is reviewable under the second prong. Based on your analysis, how would you propose the court address a question like that? The appropriate response under the law as it stands right now, unless and until the Illinois Supreme Court says that we can adopt a definition of reasonable doubt and explain this to juries, the court's response should be you have received all the definitions, maybe not you have received all the definitions of reasonable doubt. Reasonable doubt is a self-defining term. All I can give you are the words reasonable doubt. Please go forth and continue to deliberate. There are lots of questions that juries come up with where the court is unfortunately not able to give the jurors a satisfying answer and has to say you please continue to deliberate. And this is, I would submit, another one of those circumstances. And as you pointed out, a lot of cases go back for retrials on this sole issue. And make any sense why there isn't an IPI instruction, if nothing else, that says self-define? I think that there could, there's room here for improvement in the way that this is handled. Courts handle it, trial courts handle it differently. Each court seems to have its preferred way of responding to questions of this nature. Yes, I think there's room for something in the IPI or something in the rules to say if you receive a question from a jury about the definition of reasonable doubt, because it comes up. So what prong of planarity do you think applies? Second prong of planarity. This is structural. Yes. Thank you. Mr. Nicolosi, when you're ready. Good morning, Your Honors. May it please the court, please counsel. Your Honors, I guess I will focus on issues two and four. I can briefly touch on one and three. As for the first issue is just whether or not the evidence was sufficient to find the defendant guilty and the people submit, direct the court to the people's argument in their brief and that the evidence was clearly sufficient to convict the defendant. Issue two, Your Honor, whether the prosecutor misstated, number one, this issue was forfeited. That's a recurring theme throughout this case. It seems like every issue was forfeited. Cases clearly say that the plein air rule should be strictly enforced if there's no objection to closing argument. This is something that clearly the counsel heard these statements regarding the DNA profile and what the evidence showed, what it didn't show. The counselor clearly heard the arguments, could have objected, and then could have obviously cured the error right there if there was one. And the cases, and I say this in my brief, that counselors can obtain a tactical benefit by failing to object because then here we are, here we are on appeal, and they get basically two bites of the apple. If they're found guilty, then they can bring it up, say, hey, it's plein air. It doesn't seem right, Your Honors. Moving, well, the first step of the plein air rule. Do you think this was strategy? It certainly could have been, Your Honor. Yeah, it certainly could have been. The first step of the plein air rule, of course, is to determine whether or not there's any error at all. People submit that there was no error here. But the fact is that both attorneys made abundantly clear during their arguments and the testimony showed throughout the trial what the lab technician testified to. Both attorneys and the lab technician stated that only that the victim's DNA profile could not be excluded from the mixture on the dildo. That was abundantly clear. The state said, quote, in their closing argument, AR can't be excluded. The defendant's counsel said, quote, the victim's profile cannot be excluded. The remarks complained of need to be considered in the context of the entire closing argument. When you consider them in the context of the entire closing argument, the jury could not have been misled, likely or actually misled, by what the prosecutor stated. Because again, the testimony was clear. The only testimony in the whole course of the trial was that the victim's DNA profile could not have been excluded from having been contributed to the mixture. That was clear. The jury heard the testimony. They knew that there was never any testimony by anybody that there was an exact match here. And further, the trial judge instructed the jury twice that the arguments are not evidence and that the lawyers can draw reasonable inferences from the evidence presented. The people submit that this wasn't a reasonable inference. The victim testified that this dildo was used on her the night before she made the complaint. And her testimony was certainly supported by the fact that her DNA could not have been excluded. Further, okay, so the people submit that no error occurred if this court deems that error did occur. This wasn't plain error because this case was not closely balanced. We're talking about Issue 2. In Issue 3 in my brief, I discuss more thoroughly the Naylor case and what closely balanced really means. Counsel stated that this was basically a credibility contest. The people submit that it was more than that because we actually do have some physical evidence here. The fact is that the DNA mixture on the dildo, again, the results were that the victim could not have been excluded. That's physical evidence. And another fact is that the defendant's DNA was found in the white towel just as the victim testified that she spit out his ejaculate into the white towel was found. This is physical evidence. And therefore, we don't believe concerning Issue 2 and Issue 3, the closely balanced prong, that this is not just a credibility contest that should warrant automatic reversal under the plain error rule. Moving ahead to, I'm just going to jump ahead to Issue 4. Justice Schmitt, I'm glad you said the law makes no sense. It definitely sounds better coming from you than from me. I don't understand. I'm not certain it does. Oh, I guarantee you it does. Again, what the trial judge instructed, and again, this is forfeited, again, common theme here. The trial judge said, quote, as far as the reasonable doubt question, you've received all the definition, which is none of reasonable doubt. That should have informed the jury that there is no definition. The judge continued, reasonable doubt is for you to determine. People don't believe that's a definition of reasonable doubt. I think it's different than what happened in Turman and what happened in Franklin. Turman, the jury was told, quote, is for the jury to collectively determine what reasonable doubt is. I think the last part of that quote is important. This is what reasonable doubt is. That's clearly a definition. Franklin, very similarly, quote, reasonable doubt is what each of you individually and collectively as 12 of you believe is reasonable doubt, end quote. Again, what each of you believe is reasonable doubt. I think that's more of a definition than what we have here, but at the same token, Justice Schmitt, what you were discussing earlier, if the judges say nothing to the jury, what is the jury supposed to, what conclusion, what other possible conclusion could they come to then? It is up to them to assess reasonable doubt. I don't know how any of these types of statements give the jury any more. I mean, that's fine, but isn't it all theory? I mean, aren't we kind of stuck with Turman and Marshall? Well, they exist, but again, Judge, I hope I distinguished those from the facts of our case. These cases have to be fact-specific, and I think the words used are very critical, and the fact is that the language used in Turman and Franklin by the judges definitely are much more close to a definition of reasonable doubt than what the trial judge provided here. That's why I believe this case should be considered differently than Turman and Franklin. With that, if there are any other questions, I would be happy to answer them. Thank you. Thank you. One second. Just briefly, Your Honor, with regard to Issue 2, the State repeatedly notes that Defense Counsel properly characterized the DNA evidence in its closing argument, and the trial court admonished the jury that arguments are not evidence. We would turn the Court's attention to People v. Giangrande, in which, very similarly, the prosecution misstated forensic evidence that the defendant's hair was found at the scene, when in fact the testimony was just that the defendant could not be excluded as a contributor of that hair. The Defense Counsel immediately objected during the argument. The Court stopped the argument, admonished the jury that that was not a correct statement of the evidence, and the appellate court nonetheless found that the overstatement of the forensic evidence was reversible error. We have here scientific evidence that juries find to be very persuasive. The colloquial understanding of DNA evidence is that DNA is what you use to find a person, to find a perpetrator. It's our genetic fingerprint. That's exactly what the State told the jury happened here. The DNA evidence, quote, found the person whose DNA was on this item, and it was AR. With regard to whether the evidence was closely balanced in this case, the State makes the point that they rely on this forensic evidence to support their contention that AR's version of events is more credible than James Lurcher's. The white towel evidence that was cited by counsel is not nearly as strong as the State would suggest. AR purportedly told the police about a white towel into which she spit ejaculate. A white towel was recovered from the home but was tested for DNA. There was one male and one female profile on that white towel. The male profile was James Lurcher. AR was excluded from having contributed that sample. Further, the white towel was not found with the rest of the materials that were recovered from the home. Those were recovered from the bedroom. They apparently had to make some search of the house and found a white towel in the basement, but there was never any testimony by which AR identified this as the white towel. The fact that in James Lurcher's own home there was a white towel bearing his genetic material is not conclusive and does not definitively establish that AR's version of events is more credible. But the ultimate point here is this was a credibility contest. AR gave a version of events. James Lurcher provided an alternate explanation, that he was distraught over the demise of his marriage and their crushing financial troubles. The State clearly used this scientific evidence to bolster its case in an attempt to suggest that the science was on its side. With regard to issue four, whatever our dissatisfaction may be with the way that courts are instructed to not instruct the jury on the definition of reasonable doubt, it is what it is. This is the system we live with at this point. Let me ask a bit, because this is an important issue and we see it a lot. But out in the real, out in those courtrooms, far away from the rarefied air of courts or review, when a jury sends out a question, they say, define reasonable doubt for us. And the judge, now if the judge sends back an answer, you've received all the instructions you're going to receive, you'd agree that'd be perfectly fine, right? Indeed. If a judge said, received a note that said, please define reasonable doubt and sent back saying, you've received all the instructions you're going to receive, please continue to deliberate, we would find no error. Okay. Now what do you reckon that jury's going to do when they get that answer back there? Is there any doubt that they look at each other and say, well I guess we're going to have to figure out what reasonable doubt means? Certainly. And isn't that what the judge just told them to do in this case? But it is different for a jury to look around and say, well this is a very unsatisfying non-answer, and we're going to have to figure out whether a reasonable doubt exists here. And what we think those words mean is different than a trial court telling a jury, reasonable doubt, the definition of reasonable doubt is for you to determine. It's, I understand that they're, the trial judge has now given the imprimatur of, you get to choose the definition of reasonable doubt, and that's not what the Illinois courts have said the definition is. They have not said that this is a term without definition. They've said it's self-defining. But isn't that what the judge is telling them, exactly what he's telling them when he says, I'm not going to answer your question? He didn't say I'm not going to answer your question. Well, in essence he is, he didn't answer, I mean, I'm paraphrasing obviously, but the net result of the appropriate answer is don't, you've received all the instructions you're going to receive, or something to that effect. The bottom line is from a, is I'm not answering your question. And by not answering the question, you're telling them, figure it out. I would argue the more prudent course of action for a trial court would be to say, I'm not going to answer your question. But once the trial court goes beyond that and says, there is no definition of this term, it's for you all to go back there and determine, the court has run afoul of what the Illinois Supreme Court has said on this issue. I mean, then obviously I have to agree with you. It's just, I'm having a little trouble with the sense of it. And like I said, whatever our dissatisfaction with sort of the state of the world it is, this is the state of the world as it is. Is there no further questions? Thank you. We will be taking the matter under advisement and rendering the decision without undue delay. For now, there will be a brief recess for panel change.